Macco & Stern, LLP
Attorney for Dorothy Murphy
135 Pinelawn Road
Suite 120S
Melville, NY  11747
631-549-7900
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x


In re:                                             Chapter 13

JAMES N. MURPHY,                                   Case No. 14-73636-las

                         Debtor.
-----------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF ALLOWANCE OF PROOF OF CLAIM OF
DOROTHY MURPHY UNDER SECTION 507(a)(1) OF THE BANKRUPTCY CODE
AS A DOMESTIC SUPPORT OBLIGATION**

## ISSUE

James N. Murphy, the Debtor herein, filed a chapter 13 bankruptcy proceeding on August

6, 2014.  Pursuant to the Chapter 13 plan filed on behalf of the Debtor, the Debtor has asserted

that the amount owing to Dorothy Murphy ("Dorothy") as and for an award to her of retroactive

pension payments from a QDRO of the Debtor's pension is an equitable distribution claim in the

amount of $107,232.60, and therefore Dorothy should be paid as an unsecured claimant and the

award constitutes a dischargeable debt.

Dorothy Murphy asserts that the retroactive pension award is in the nature of alimony,

maintenance and support and therefore should be classified as a 507(a)(1) priority domestic

support obligation claim and must be paid in full under the chapter 13 distribution scheme.

## ARGUMENT

Dorothy asserts that under the Separation Agreement, dated March 15, 2013, **(see

Exhibit 3)** that she waived alimony, maintenance and support based on the fact that she would

be receiving her entire fifty (50%) interest in the pension of the Debtor as well as being entitled to a large retroactive pension payment from the inception of the divorce proceeding.

The facts will bear out that there was a substantial discrepancy in the relative incomes of the Debtor and Dorothy and that Dorothy had every expectation of receiving the retroactive pension award. The retroactive pension award was obtained in the Supreme Court, County of Nassau and entitled Dorothy to the sum of $107,232.66. Dorothy, under any circumstances, would not have waived her right to receive alimony, support and maintenance unless she relied on and anticipated her entitlement to receive her retroactive pension proceeds.

Therefore it is Dorothy's position that the proof of claim assigned claim number 5, filed as a 507(a)(1) priority claim, is valid and must be paid in full. The Debtor filed an objection to Dorothy's proof of claim asserting that the retroactive pension payment is a dischargeable debt; constitutes an equitable distribution award; and therefore is dischargeable under 11 U.S.C. 1328(a)(2). It is submitted that this court must decide whether Dorothy's proof of claim, is a valid §507(a)(1) claim or an equitable distribution award under the chapter 13 that will result in a treatment similar to other general unsecured creditors of this estate.

On January 22, 2009, Dorothy commenced a divorce action in the Supreme Court, State of New York, County of Nassau. More than four years later, on March 15, 2013, the Debtor and Dorothy executed a Stipulation of Settlement (the "Stipulation"). Their divorce proceeding, which is now more than six years old, has still not been finalized.

Under Article 7 of the Stipulation, both parties agreed to waive any claim to maintenance. As testimony will reveal, Dorothy agreed to this provision despite the fact that there existed a huge disparity in income during Dorothy and the Debtor's marriage because the Debtor's income was, and still remains, considerably greater than Dorothy's income.

2

As the parties' tax returns indicate, the income of James Murphy was as follows:

2011 - $122,822.00;

2012 - $153,504.00;

2013 - $115,897.00;

2014 approximate anticipated income - $106,097.25. **(see Exhibit 5)**

Dorothy's income for those same years is as follows:

2011 - $40,159.00;

2012 - $37,968.00;

2013 - $39,232.00 plus pension proceeds of approximately $18,000.00 totaling $57,232.00;

2014 anticipated income - $38,850.00 plus pension proceeds of $24,999.96 totaling $63,849.96 **(see Exhibit 10)**

As Dorothy's testimony will set forth, she agreed to the waiver of maintenance despite the large disparity in income predicated upon her receiving fifty (50%) percent of the pension income through a QDRO retroactive to the date of the commencement of the divorce proceeding, January 22, 2009.

The Debtor, pursuant to the Chapter 13 plan, argues that the retroactive pension payment totaling in excess of $107,000.00 which the Debtor received and took the benefit of for over a four year period, was an equitable distribution award that had no bearing on Dorothy agreeing to waive maintenance.

As is set forth in Article 7.3 of the Separation Agreement:

**"the parties acknowledge that the provisions of this Article and the other Articles of this Agreement are dependent upon the actual distributions and payments for the division of marital property as hereinafter provided and that the parties will necessarily depend upon receipt of said assets and payments in order to maintain a proper standard of living, that failure to receive said assets and payments will seriously impair that standard and that the provisions for maintenance would have been significantly higher, but for the reliance of the parties upon receipt of said assets and payments."**

3

Article 15 of the Separation Agreement is pivotal in this court's determination. Paragraph 15. 1 points out that the Debtor's Police Pension Defined Benefit Plan (the "Pension") was in payout status at the time of the filing of the divorce, and, as such, the Debtor was obligated to pay Dorothy one-half of her entitlement under the Pension effective upon receipt of the next Pension payment received after the Stipulation was executed.

Even though the payout status of the Pension was in effect in January, 2009 at the commencement and throughout the divorce proceeding, Dorothy **NEVER** received any payment from those pension monies through the QDRO until after the execution of the Separation Agreement in April, 2013, more than 4 years after the commencement of the divorce proceeding.

Section 15.1 of the Separation Agreement is also pivotal in that it contradicts the Debtor's position, that Dorothy was not entitled to her fifty (50%) share of the Pension and variable supplement retroactive to the commencement of the divorce on January 22, 2009.  The Separation Agreement states that Dorothy would have to bring a motion within a specific period of time to determine the entitlement to retroactive pension funds, clearly indicating that Dorothy intended to pursue her full entitlement of her portion of the pension proceeds.

Given the disparity of income and the four year divorce proceeding, under no circumstances would Dorothy have agreed to a waiver of maintenance without an expectation that she was to receive a large lump sum retroactive pension payment from the divorce proceeding.

Pursuant to Article 15, Dorothy, by her matrimonial counsel, did file a motion to direct the Debtor to pay Dorothy's fifty (50%) percent share of the Pension and the variable supplement retroactive to January 22, 2009, the date that the divorce proceeding began.

While the Debtor opposed the application, the Honorable Stacy D. Bennett, Acting

4

Justice of the Supreme Court, County of Nassau decided in favor of Dorothy.

Judge Bennett stated as follows:

> …**Absent proof of an agreement between the parties as to another date from wife's fifty percent marital portion of husband's defined police pension benefit and variable supplement is to begin, wife is entitled to such benefits retroactive to the date of the commencement of the divorce action. …It is well settled that vested rights in a non-contributing pension plan are marital property to the extent that they were acquired between the date of the marriage and the date of the commencement of the matrimonial action. …Pension benefits or vested rights to the those benefits constitute marital property, except to the extent that they are earned or acquired before marriage or after commencement of a matrimonial action." (see Exhibit 4)**

The State Court therefore determined that Dorothy was entitled to fifty (50%) percent of the Debtor's Pension and supplemental variable benefits effective as of January 22, 2009. However the Debtor failed to pay Dorothy any of those retroactive pension benefits.

Thereafter, Dorothy moved by Order to Show Cause to compel the Debtor to comply with the State Court's decision of September 23, 2013.

The State Court directed the Debtor to pay his wife $107,232.62 over a monthly payout. The Debtor never complied with the State Court's order and the Debtor filed this bankruptcy before entry of the judgment.

It is also insightful that under 15.2 of the Separation Agreement that the parties agreed as to the transfer of the pension as follows:

> **"The Transfer shall take place prior to any bankruptcy filing by the husband and he shall not attempt to discharge this obligation in bankruptcy or otherwise."**

The filing of the chapter 13 and the effort to discharge the retroactive pension payments as equitable distribution flies in the face of the agreed to provisions of the Separation Agreement.

The court is asked to consider an analysis to determine whether or not this Debtor can discharge the retroactive pension payments paying a mere small percentage to Dorothy under a chapter 13 plan.

The Honorable John Hall considered the factors to determine whether a debt was non-dischargeable as being in the nature of support, maintenance, or alimony or whether it was a dischargeable property settlement. *See **In re Berg** 167 B.R. 9*

In that case, Judge Hall set forth certain factors for the court to take into consideration with respect to a determination of non-dischargeability.

The court set the following criteria:

**(1) Whether the obligation terminates upon death or remarriage of either spouse, upon any children reaching majority or upon some other event;**

**(2) How the obligation is characterized in the parties' settlement agreement or divorce decree, and the context of which it appears;**

**(3) Whether the payment appeared to balance disparate income between the former spouses,**

**(4) Whether the payments are to be made directly to the spouse or a third party;**

**(5) Whether the payment is payable in a lump sum or installments over time;**

**(6) Whether the parties intended to create an obligation of support or to divide marital property;**

**(7) Whether an assumption of the debt has the effect of providing necessary support to insure the daily needs of the former spouse and any children of the marriage are met;**

**(8) Whether an assumption of the debt has the effect of providing support necessary to insure a home for the non-debtor spouse and his or her minor children.**

The Honorable Alan S. Trust, utilized the **BERG** factors in determining whether a claim represented a domestic support obligation or a dischargeable debt in a chapter 13 proceeding. *See **In re Conte** 2012WL 4739339.*  In that case,  Judge Trust applied the factors set forth in the **BERG** case to determine whether the obligation was a domestic support obligation or a dischargeable equitable distribution claim.

6

While the facts of each of these cases are substantially different from the facts of this instant case, it is nevertheless submitted that the criteria set forth in determining the issue in this case can be guided by the **BERG** factors as well.

Although it is undisputed that Dorothy waived maintenance, the Separation Agreement also states that the parties relied on receiving assets and property contained in the Separation Agreement, including Dorothy's expectation to receive pension benefits from the inception of the divorce proceeding on January 22, 2009.

There can also be no dispute as to substantial disparate income between the respected parties. Until Dorothy began receiving pension payments in April, 2013, her income had been, and continues to be, earnings as an employee of St. Francis Hospital in the range of $38,000.00 to $40,000.00 a year.   A single person living on Long Island renting an apartment, can barely afford the cost of housing, let alone be expected to meet necessary living expenses on that income.

Based on the tax returns and income, there can be no dispute that there has always been a significant imbalance with respect to the incomes of the spouses **(see Exhibits 5 and 6).**  The Debtor has consistently generated income both through salary and through pension far in excess of Dorothy.

Dorothy has minimal savings in assets other than her current salary of approximately $39,000.00 - $40,000.00 a year and her monthly fifty (50) percent interest in the pension of $2,183.00.  She barely has the necessary support for herself and assisting her adult children. Dorothy pays $28,800 a year for a rental apartment ($2,400.00 a month) and receives $24,999 per year from the pension. Therefore, the QDRO that she now receives does not even cover her rent, leaving her fairly nominal income to meet all other expenses.

In addition to the apartment rental, Dorothy also contributes significant support for both of her adult children.  Her son is currently in law school and Dorothy pays most of his monthly

bills and her daughter is currently living with her, not working after undergoing major surgery.

Dorothy pays for her daughter's car insurance, groceries, medicine and other expenses.  The

children get no financial support or financial contribution whatsoever from the Debtor.

The pension income does not even cover Dorothy's housing needs.  That leaves her

approximately $39,000.00 a year in gross income to meet all of the living expenses including

support and assistance for her children when necessary.

As a matter of law, Dorothy was entitled to her fifty (50%) percent ownership interest in

the pension from the commencement date of the divorce proceeding on January 22, 2009.

Her matrimonial counsel advised her as a matter of law that the Debtor had no defense to

owing her retroactive payments calculated at approximately $107,000.00.  Those monies were

clearly going to be and remain the only avenue for Dorothy to put any savings away other than

her hospital pension.

She currently has, and has had throughout the matrimonial proceeding, no fall back

income in the event of loss of job, illness, disability or any potential catastrophic event in her

life.  She was compelled to obtain a credit union loan for $15,000.00 from her employer, St.

Francis Hospital in September, 2013 which she pays back from direct salary deductions.

It is difficult to accept the premise that without the retroactive payment amount, that

Dorothy could be assured of receiving and being provided with necessary income to meet

necessary living expenses.

Finally, the retroactive pension payment was **NOT** the Debtor's property or asset.  It

constituted Dorothy's fifty (50%) percent ownership interest in the QDRO.  The Debtor, from

January, 2009 until today, received in excess of $107,000.00 of pension proceeds that belonged

to Dorothy.  Additionally, the Debtor utilized and benefited from those proceeds to the detriment

of Dorothy.  Those funds were never the Debtor's to spend.  He utilized those funds for his own

indulgences while failing to segregate those funds for turnover to Dorothy in violation of the

QDRO.  It was Dorothy's asset and yet the Debtor received the full benefit of the retroactive

pension award and now seeks to use the Bankruptcy Court and a chapter 13 plan to ratify his

misappropriations to literally pay this amount back to Dorothy as pennies on the dollar.

It is submitted that utilizing the ***BERG*** and ***CONTE*** analysis, the retroactive pension

payment was, and continues to be a domestic support obligation.  Dorothy's Pension proceeds

have effectively been ripped away from her with no certainty that she will ever be able to recoup

the retroactive pension payments that, as a matter of law, were her property and her asset.

Under no foreseeable circumstances, based on the consistent earnings of Dorothy, would

Dorothy have any opportunity to save money for her own benefit and her family's needs.

Based on the foregoing facts and the law, the proof of claim filed by Dorothy as and for a

Domestic Support Obligation claim under §507(a)(1) of the Bankruptcy Code should be allowed

and the motion by the Debtor seeking to reclassify the claim as an unsecured debt should be in

all respects denied.

Dated: Melville, New York        Respectfully submitted,
      February  27, 2015

      MACCO & STERN, LLP

      /s/ Richard L. Stern
By:_____
      RICHARD L. STERN
      Attorney for Movant Dorothy Murphy
      135 Pinelawn Road – Suite 120 South
      Melville, New York 11747
      (631) 549-7900

Macco & Stern, LLP
Attorney for Dorothy Murphy
135 Pinelawn Road
Suite 120S
Melville, NY  11747
631-549-7900
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


In re:                                                              Chapter 13

JAMES N. MURPHY,                                   Case No. 14-73636-las

                        Debtor.
-------------------------------------------------------------x

### AFFIDAVIT OF SERVICE

STATE OF NEW YORK)
COUNTY OF SUFFOLK)  ss.:


        JEANETTE HODGINS, being duly sworn, deposes and says: deponent is not a party to
the action, is over 18 years of age and resides at East Northport, New York.


        On February 27, 2015 deponent served the within **MEMORANDUM IN SUPPORT
OF PROOF OF CLAIM OF DOROTHY MURPHY UNDER SECTION 507(a)(1) OF THE
BANKRUPTCY CODE AS A DOMESTIC SUPPORT OBLIGATION** upon the following
parties, at the addresses designated by said parties, at the addresses designated by said parties for
that purpose, by depositing a true copy of same, enclosed in a post-paid properly addressed
wrapper in an official depository under the exclusive care and custody of the United States Postal
Service within the State of New York:

Office of the U.S. Trustee
Long Island Federal Courthouse                               .
560 Federal Plaza
Central Islip, NY  11722

Richard F. Artura, Esq.
Attorney for the Debtor
Phillips, Weiner, Artura & Cox
165 South Wellwood Avenue
Lindenhurst, NY  11757

10

Marianne DeRosa, Chapter 13 Trustee
115 Eileen Way
Suite 105
Syosset, NY  11791


                              /s/ Jeanette Hodgins

                              _____

                              JEANETTE HODGINS

Sworn to before me this
27th   day of February, 2015
/s/ Richard L. Stern

_____

NOTARY PUBLIC
RICHARD L. STERN
Notary Public, State of New York
No. 02ST4665096, Suffolk County
Commission Expires April 30, 2018

11